## In re FARKAS.

(District Court, E. D. New York. April 15, 1913.)

1. BANKRUPTCY (§ 229*)—EXAMINATION OF BANKRUPT AND WITNESSES—CONTEMPT.

Punishment for contempt in bankruptcy proceedings should not be used solely for intimidation, nor in such a way as to prevent or delay the administration of the estate, but should be applied first to compel obedience to proper orders of the court, to secure proper results in administration.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 385; Dec. Dig. § 229.*]

2. BANKRUPTCY (§ 229*)—CONTEMPT—PUNISHMENT.

Where a person is in contempt for failure to perform a duty under the bankruptcy law, he should first be allowed to purge himself of the civil contempt by performing the required duty, and by placing the creditors in the position they would have been if no contempt had occurred, after which a fine or definite imprisonment may be imposed for the criminal contempt, if not excused.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 385; Dec. Dig. § 229.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BANKRUPTCY (§ 237*)—CONTEMPT—EXAMINATION OF BANKRUPT—PURGING
    CONTEMPT.
        Where a bankrupt and two witnesses were in contempt for failing to
    appear at an adjourned date for examination, and after proceedings to
    punish them for contempt had been instituted it was shown that they
    had appeared, apologized, tried to excuse themselves, and offered to sub-
    mit to an examination as freely as if they had been present at the first
    hearing, they thereby purged themselves of the civil contempt, and the
    only question remaining was the punishment to be imposed to secure
    respect for the court's authority.
        [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 37, 48, 405;
    Dec. Dig. § 237.*]

4. BANKRUPTCY (§ 237*)—CONTEMPT—FAILURE TO APPEAR FOR EXAMINATION—
    PUNISHMENT.
        Where contempt proceedings were instituted against a bankrupt and
    two witnesses for failure to appear at an adjourned date for examina-
    tion, after which they purged themselves of the civil contempt by ap-
    pearing and submitting to examination, and it appeared that their failure
    to appear originally was the result of carelessness and trustfulness in
    others, the punishment for the criminal contempt would be limited to a
    fine.
        [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 37, 48, 405;
    Dec. Dig. § 237.*]

In Bankruptcy. In the matter of bankruptcy proceedings against
Louis Farkas. Proceedings to punish the bankrupt and certain wit-
nesses, for contempt in refusing to appear at an adjourned date for
examination before the referee. Fines imposed.

Joseph A. Arnold, of New York City, for trustee.

CHATFIELD, District Judge. The bankrupt and two witnesses
(who were under examination before the referee as to certain property
which had been taken from the bankrupt's place of business before ad-
judication) were brought into court to show cause on certificate of the
referee why they should not be punished for contempt in not appearing
on an adjourned day, and specifically for disregard of the referee's
orders.

The court, after adjournments (made necessary to produce the pres-
ence of the three men in the courtroom) and on their denial of inten-
tional acts of contempt, inquired into the purpose of the examination
before the referee, and also into the requirements of the proper admin-
istration of the bankrupt estate. It appeared that the examination of
the bankrupt and the three witnesses as to the property above men-
tioned had never been concluded. The court therefore ordered the
three respondents to return on a later day for the infliction of pun-
ishment for any contempt which should be considered to have been
merited by their actions, and in the meantime ordered the bankrupt
and the two witnesses to appear before the referee and submit to any
examination which was desired, or which had been interfered with by
their previous failure to appear. In other words, they were given an
opportunity to purge themselves of any contempt which could be cured
by their subsequent conduct.

The referee has now certified (and has filed the testimony taken) that the men did appear and were examined only upon the question as to whether their previous apparent and admitted contempt was willful and contumacious. As to this he reports that the contempt shown was not from bad faith or intended endeavor to frustrate the purpose of the reference, but was rather a careless or indifferent disregard for the court's order and the requirements of the situation, based upon reliance on the word of other parties whose accuracy and authority should not have been assumed as complete.

[1, 2] This court has power under the bankruptcy statute to compel the proper administration of an estate and also obedience to the court's orders. Punishment for contempt should not be used solely for intimidation, nor in such a way as to prevent or delay the administration of the estate. The first thing to be done is to compel obedience to proper orders and to secure proper results in administration. All contempt that affects merely the authority of the court is in its nature criminal, and should not be acted upon so as to prevent opportunity for reparation. Punishment should include means to secure a proper carrying out of the steps in the bankruptcy proceeding as speedily as possible. So, if a person is in contempt for failure to do what under the bankruptcy law he should do, he should first be allowed to purge himself of the civil contempt by doing what he ought, and by putting the creditors in the position they would have been if no contempt had occurred. The question of punishment for the criminal contempt, however, can be met only by a fine or definite imprisonment, if not excused. The question of compliance with the disregarded order is like restitution of property wrongfully taken, and such a result is the right of the parties, whether or no any sentence for the criminal contempt is imposed. Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

[3] In the present case, the parties charged with contempt have appeared, apologized, tried to excuse themselves, and offered themselves for examination as freely as if they had been present at the first hearing. This is like restitution, and leaves only the question of punishment to secure respect for the court's authority. No hearing as to the extent of the criminal contempt was ordered or expected before the referee. The court intended to dispose of that question, if the referee certified that the respondents had purged themselves of their failure to give testimony on the subjects under inquiry.

The certificate of the referee shows that the attorney for the creditors has lost sight of the administration of the estate in an attempt to show that the respondents did not intend to obey the law in that administration. He has given them no chance to repent, and to do what they should have done before. He has also expended considerable time and funds in defense of the court's authority, when no such question was before the referee. Nor was the referee right in allowing the hearings as to the criminal contempt, in the absence of an order sending to him as special commissioner the consideration of that question. The court must now assume that the appearance of the respondents and their willingness to be examined has in effect purged them of the consequences of a continued state of defiance, and can only pun-

ish them for their original carelessness and trustfulness in others, which resulted in the contempt which they admit did occur.

[4] For this they need not be punished by imprisonment, but should be fined a sum equivalent to the trouble which they caused and sufficient to impress the lesson required. A fine of $15 each, of which $20 will go to the United States, $10 to the attorney for the trustee, and $15 to the bankrupt estate for the expense of the contempt proceedings, will be imposed. In default of payment, the respondents will be committed for a period of 15 days each in the Mineola jail, unless the fine be sooner paid.